BARDEN, Appellant, vs. THE CITY OF PORTAGE, Respondent.

*February 6 — February 24, 1891.*

CITY: *Liability for flowage of lands: Damages: Waiver.*

1. A city cannot justify the submerging and destruction of valuable
   farms on the ground that the works causing the injury were con-
   structed under an act of the legislature specially intended for their
   protection from floods.
2. The city of Portage, being authorized by ch. 213, Laws of 1873, to
   construct a levee along the south bank of the Wisconsin river, for
   the purpose of reclaiming the lands subject to overflow and pro-
   tecting the highways, built a levee along that bank across the
   northerly half of plaintiff's land abutting on the river, where the
   banks were high, thereby closing several natural channels through
   which in times of freshets the high water had been accustomed to
   escape and pass into the Baraboo river, and confining it to a much
   narrower channel, but refused to extend such levee along that
   portion of his farm where the banks were low, though frequently
   warned by him of the danger of an overflow thereof if it was not
   extended, and urged to extend it.    *Held,* that the city was liable to
   him for the damages caused by the compressed and accumulated
   waters of the river overflowing such low banks upon his land in
   time of freshet.
3. The plaintiff did not waive his right to such damages, and is not
   estopped from claiming them, by his having favored the work and
   offered to give the right of way for the levee, or by his afterward
   refusing to give such right of way until the levee was extended so
   as to protect his low lands.

4. The building of a levee for the protection of plaintiff's low lands being made necessary by the action of the city in building one along the upper portion of his farm and refusing to extend it, he has a right to do the work, and to prove what it will cost to do it and recover the same as a part of his damages.

APPEAL from the Circuit Court for *Columbia* County. The case is fully stated in the opinion.

For the appellant there was a brief by *G. C. Prentiss*, and oral argument by *Mr. Prentiss* and *L. W. Barden*.

*W. S. Stroud* and *J. H. Rogers*, for the respondent, argued that the fact that the levee was built by the permission and request of the plaintiff was a full defense to the action. *French v. Owen*, 2 Wis. 250; *Lockhart v. Geir*, 54 id. 133; *Lee v. Meeker*, 2 id. 487; *Selden, Ex'r, v. Del. & Hud. Canal Co.* 29 N. Y. 634; *Marsh v. Bellew*, 45 Wis. 36. Such consent was a waiver of the right of action for trespass and ejectment. *Taylor v. C., M. & St. P. R. Co.* 63 Wis. 327; *Mil. & N. R. Co. v. Strange*, 63 id. 178, 183; *Cassidy v. C. & N. W. R. Co.* 70 id. 440. The city cannot be held liable for damages resulting from a defective plan of the levee. *Gilluly v. Madison*, 63 Wis. 518; *Alexander v. Milwaukee*, 16 id. 247. The act authorizing the work contemplated that the city should determine for itself where to commence the work, and delegated to the city all the rights of the legislature. *J. S. Keator L. Co. v. St. Croix B. Co.* 72 Wis. 62; *Black Riv. Imp. Co. v. La Crosse B. & T. Co.* 54 id. 659. The city is not liable in an action for consequential damages. *Lansing v. Smith*, 8 Cow. 146; *Northern Trans. Co. v. Chicago*, 99 U. S. 336; *Lamb v. Recl. Dist.* 73 Cal. 125; *Green v. State*, 73 id. 29; *Rex v. Comm.* 8 Barn. & C. 355; *Hoard v. Des Moines*, 62 Ia. 326; *Shelbyville & B. T. Co. v. Greene*, 99 Ind. 205; *Green v. Swift*, 47 Cal. 536; *N. O. Drainage Case*, 11 La. Ann. 370; *Mailhot v. Pugh*, 30 La. Ann. 1359; *People v. Canal App.* 33 N. Y. 461; *McDaniel v. Cummings*, 83 Cal. 515. The city is not

liable for not fully accomplishing the objects of the law; nor can the plaintiff recover as for injuries from a nuisance, without having first requested its removal. *Slight v. Gutzlaff*, 35 Wis. 675; *Groff v. Aukerbrandt*, 124 Ill. 51.

Orton, J. The Wisconsin river, after it passes the dells above Kilbourn City, runs in an east-southeasterly direction to *Portage City*, and then bends to the southwest. *Portage City* is on both sides of the river, and on the south side of the river is the farm of the plaintiff, of some 100 acres, within the city limits. The plaintiff's dwelling-house and out-buildings are on or near the river, and there is a bridge across the river, opposite said dwelling-house. The Baraboo river runs for several miles nearly parallel with the Wisconsin river, in some places only a mile or two apart, until it takes nearly the same curve, and empties into the Wisconsin river about five miles south of plaintiff's house. In times of high water the Wisconsin river formerly ran across this dividing space, in several natural currents, into the Baraboo river below. The north banks of the Wisconsin river are generally high along these distances, and the south banks are quite low, with a few exceptions. The south bank for several rods west and east of the bridge and plaintiff's house is high, and the land is high ground where the plaintiff's farm buildings stand, and some distance to the south. A few rods below the bridge the high banks end, and then they are low, and just above the ordinary surface of the water, to the east boundary of plaintiff's farm. The farm is generally low ground; so that, if the river overflows these low places, the water will naturally run over the land to the south, and at the same time to the west, around the high ground where said buildings stand. Before 1886 such flowage had always been comparatively slight, and not much to the injury of the farm. The farm is valuable for raising the ordinary crops and fruits and for

hay. There were hay barns in several places, and the build-
ings are good and suitable for the place. The plaintiff has
occupied it as his residence for many years. The town of
Caledonia lies a little south of the plaintiff's farm in Colum-
bia county, and the town of Fairfield is several miles west,
in Sauk county, and the river runs through both of these
towns. There is a street or highway southwest from the
bridge, which passes some distance through plaintiff's land,
and some parts of it are overflowed in times of freshets by
the waters running across to the Baraboo river.

I have made this description of topographical conditions
partly from the testimony, but mostly from my own knowl-
edge and memory, and it may not be critically accurate, but
it will aid somewhat in understanding the case. The case
was not well prepared. There should have been maps,
drawings, and measurements, as well as plans and surveys
of the works.

An act of the legislature of 1873, entitled "An act au-
thorizing the construction of a levee along the Wiscon-
sin river in the counties of Columbia and Sauk," is published
as chapter 213 of the laws of that year. It seems that
nothing much was ever done under it until about 1885 or
1886. The first section of the act reads as follows: "For
the purpose of reclaiming the lands subject to overflow
from the Wisconsin river in times of high water, and pro-
tecting the highways from overflow, and enabling the
proper authorities to keep them in a passable condition at
all seasons, the authorities of the city of *Portage*, and of
the town of Caledonia, in Columbia county, and of Fairfield,
in Sauk county, acting jointly or separately, are hereby au-
thorized to construct a levee along the south bank of the
Wisconsin river from any point in the city of *Portage* or
the town of Caledonia to such point up the river in the town
of Fairfield, and at such distance from the banks of the
river as may be necessary and to maintain the same." By

section 5 of said act, the said authorities are authorized to enter upon any inclosed lands; and, by section 6, damages may be awarded according to the provisions of chapter 152 of the General Laws of 1865, relating to damages for laying out highways.

In 1885 or 1886 the city of *Portage* let the contract to build this levee through its own limits, and perhaps further; and the said towns may have acted on the matter also, but to what extent is not stated, except that the levee was constructed for a long distance up the river. The city of *Portage* constructed the levee for a mile or more above the bridge at a height of from four to nine feet, down to the high land, above described, above the bridge. The effect of the levee has been to prevent the waters of the Wisconsin river from passing into the Baraboo river, where it was wont to flow, in times of high water, and to confine all the waters within the main channel of the river, made much narrower. Between the high banks at and east and west of the bridge, the river is compressed into a width of 600 feet; and the confining of the waters of the river above, between the levee on the south and the high banks on the north side, has caused a much greater volume of water to pass under the bridge than ever before and to raise the river at that point much higher. In 1888 there came an unusually large freshet, but not greater than there had been many times before the levee was built. From this compression of the waters into a narrower channel, as soon as they passed below the high banks south of the bridge, they rushed over the low south bank, and over and across the plaintiff's farm, and back even west, around the high grounds where his main buildings were situated, and more or less flooded his whole farm, washed out the foundations of buildings, destroyed the fences, submerged the highway, carried banks of sand over many acres of ground from one to four feet deep, and generally did great damage to the

farm.   These effects produced by the levee had never be-
fore been tested, but it seems that they had been to some
extent apprehended or anticipated by the plaintiff.   He
had agreed to donate the land on which the levee was
built, and from the start was in favor of the work.   From
his own testimony (and, I think, uncontradicted) it appears
that he had frequently notified and warned the authorities
that these effects might and would probably follow the
termination of the levee at the high bank above his house
and the bridge, and that the levee ought to be continued
from the high bank below his house along the low south
shore of the river through and below his farm; and he
finally refused to convey to the city the land on which the
levee had been built until it had been so continued south of
the bridge to protect his farm.

It would not seem to require the expert knowledge of a
civil or hydraulic engineer to have anticipated these effects.
As soon as this increased volume of water, compressed for
a long distance within a deep and narrow channel, should
escape from its confinement at the lower end of the high
ground, it would naturally rush in impetuous torrents over
the low south bank, and spread over all the low grounds of
the farm, just as it proved to be the case in 1888.   It was
a most signal want of common skill and judgment in the
authorities of the city in leaving the works so incomplete
as not only not to accomplish, but to defeat, the very pur-
pose of the act, and to do positive damage to lands which
before needed but little protection.   The levee not only
prevented the Wisconsin river from running into the Bara-
boo across the lands above, but gathered and confined such
waters and excessive floods within a narrower channel, so
as to spread them, at the end, over the farm of the plaint-
iff.   These are the facts substantially proved on the trial,
with some of the conclusions of fact.   The court granted a
nonsuit as soon as the plaintiff had concluded his evidence,

and this appeal is from that judgment.   A stronger or more meritorious case for damages is seldom presented to a court.   The only argument of the learned counsel of the respondent that even tends towards plausibility is that the authorities of the city are not responsible for error of judgment or for a defective plan of the work.   *Gilluly v. Madison*, 63 Wis. 518;   *Alexander v. Milwaukee*, 16 Wis. 247.

1. The very objects of the act are defeated.   They are "to reclaim the land subject to overflow, and protect the highways from overflow."   The first very high water after the levee is finished, overflows and damages one of the most valuable farms on the south side of it, and overflows the most traveled highway it was intended to protect, and which were never overflowed before to any extent.

2. The levee is so placed as to cut off and close up natural channels of the Wisconsin river, in which the surplus waters in times of freshets escaped into the Baraboo river, and diverted them down the main channel, so as to produce this very mischief.   In 1874 this same city of *Portage* constructed a wide embankment for said highway, across the low lands south of where this levee is built, about four feet high and two miles in length, which cut off and closed up the same natural channels in which the waters of the Wisconsin passed into the Baraboo river in times of high water, and did the work so negligently and unskilfully that the waters were obstructed, and caused to flow back upon and submerge the lands of one Spelman.   It is a strange coincidence that the city, fourteen years afterwards should build a levee embankment over almost the same low ground, which cut off and closed up the same channels by which the waters flowed from one river to the other, and did the work so negligently and unskilfully as to cause the waters of the river to flow back upon and submerge the lands of the plaintiff.   In both cases the city had the right to build the embankment.   In the first case the defect was that the

Barden vs. The City of Portage.

road was built without proper culverts or drains; in this case the levee was not extended below the bridge, so as to protect the lands of the plaintiff, rather than to cause their injury. Is there any conceivable difference in principle between the two cases? In the first case Spelman sued the city, and recovered the damages to his lots, and on appeal this court confirmed the judgment. *Spelman v. Portage*, 41 Wis. 144. The present chief justice said in the opinion: " We know of no principle of law which justified the city in making an embankment without proper culverts or drains, and thus damming up the waters, and causing them to destroy the plaintiff's property." It is decided, also, in that case, that the waters that ran in those channels to the Baraboo river were not surface waters, but the waters of the river in its high stages, which were accustomed to run in this manner. That case rules the present case.

3. The legislature gave the city the right to take land on which to locate the levee, but made no provision for paying damages of this kind. The act does not contemplate that any such damages could or would be caused by this work, and there would have been none had the levee been continued south of the bridge, as the plaintiff wished and often requested. *Folsom v. Apple River L. D. Co.* 41 Wis. 602; *Hackstack v. Keshena Imp. Co.* 66 Wis. 439. In these cases the works were built under acts of the legislature, and the damages were caused by flowage. There is no principle of law that can protect the city in such a case. The work, so far, is a private nuisance to the plaintiff, without justification or excuse. The conduct of the city authorities in this business has been grossly negligent and reckless. The idea that valuable farms can be submerged and destroyed under an act of the legislature made especially for their protection from floods, and the owners can have no redress, is too preposterous to be entertained by any legal mind. *Smith v. Gould*, 61 Wis. 31; *Pettigrew v. Evansville*, 25 Wis. 223; *Arimond v. Green Bay & M. Canal Co.* 31 Wis. 316.

4. The learned counsel of the respondent contends that the plaintiff favored the work, and gave the right of way or the land on which the levee was constructed, and therefore waived and is estopped from claiming damages caused by it. There is a wide difference between the taking of the land of the plaintiff on which to place the levee, and the general consequential damages caused by it to his farm and property, which he claims in this case. If there is any fact established by the evidence in this case, it is that the plaintiff all the time insisted that the levee should be continued below the bridge, and along the low south bank of the river opposite his low land. He finally refused to give the right of way until it should be so extended. He notified the authorities of the city that they must do this, or his farm might be flooded and damaged. They wilfully persisted in this gross negligence, and defied the plaintiff. There is no evidence that the plaintiff ever expressed himself satisfied with the manner in which the work was so left incomplete, but he continued to repeat that it should be continued below the bridge. There is not the slightest evidence of the plaintiff's waiver of these damages.

5. The question arose on the admission of testimony as to what should be the measure of damages in the case. The learned counsel for the appellant offered to prove what would be the cost to the plaintiff of making the necessary levee below the bridge to protect his farm, and such offer was rejected. This levee is a permanent work, and will cause similar damages to the plaintiff's farm every time there is very high water in the river. The authorities of the city do not propose to extend it any further down the river. It will be to the advantage of both parties to have the whole matter adjusted and disposed of in this action, and to have the lands of the plaintiff protected against the recurrence of such damages, rather than to have an action brought at each time when such damages shall occur in the future. The plaintiff's land and improvements ought to be

protected by an extension of this levee as soon as possible. The plaintiff has the right to do this work, and the city ought to be compelled to compensate him for it. In *Thompson v. M. & St. P. R. Co.* 27 Wis. 93, and in *Price v. M. & St. P. R. Co.* 27 Wis. 98, the building of the railroad across the lands of the plaintiff made it necessary to build a wall for their protection, and the plaintiff in each case was held entitled to recover as damages the cost of building such wall. Here the city has so constructed this work on the lands of the plaintiff as to make it necessary to build a levee for their protection. The cases are alike in principle. The evidence offered as to the cost of building such a levee ought to have been admitted as part of the plaintiff's damages. The plaintiff showed his right to recover, and the court erred in ordering a nonsuit in the case.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.