## KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD CO. *v.* JOSEPHUS SMITH.

1. WATER COURSE. *Obstruction. Valley of overflowing stream. Railroads.*

> The whole of the valley of an overflowing stream is not necessarily land within a water course. In the case of a creek with a channel about twenty feet deep and one hundred and twenty-five feet wide, the flood waters of which, flowing with the stream, periodically overflow its valley from two to three miles wide, the whole valley cannot be considered a running stream; and where a railroad, properly constructed, is built about three-fourths of a mile from, and parallel with, the channel, leaving a valley for the flow of the water a mile to a mile and a half wide, this fully meets the requirements of the law as to leaving unobstructed a running stream or water course, and the company is not liable to one owning land on the other side of the channel, on which the overflow water is made deeper and the current more swift by reason of the railroad embankment.

2. SAME. *Extraordinary flood. Right of recovery not shown.*

> In such case, there being no trouble from ordinary recurring floods, and it appearing that the overflow causing the injury was an extraordinary one, from which the injury would have resulted, even if the railroad had not been built, a recovery will be denied, (1) because no failure of duty on the part of the defendant in the construction of the roadway was established; (2) for want of causal connection between the act of defendant and the injury resulting from the flood.

FROM the circuit court of Monroe county.

HON. NEWNAN CAYCE, Judge.

Judgment for plaintiff. Defendant appeals. The opinion states the facts.

*Wallace Pratt, Buchanan & Minor* and *Sykes & Bristow,* for appellant.

1. A consideration of the facts conclusively shows that the damage to plaintiff's land was not caused by the railroad, and

that the injury would have resulted if the railroad had never been constructed. The land is situated three-quarters of a mile from the road, and on the opposite side of the creek, in a pocket or bend of the stream. In view of the plainest principle of hydraulics, with the plaintiff's land on one side of the creek, and the railroad nearly a mile away on the other side, with a bottom between ascending towards the railroad, it cannot be held that the railroad embankment caused deeper water and current over this land. To so hold would be to sustain the injured wolf in recovering damages of the negligent lamb for muddying the stream below where the wolf was drinking.

2. The railroad, all through the valley in question, was properly constructed. The defendant had the right to build it as it was, and did not thereby interfere with the rights of other riparian owners. In doing so, there was no obstruction of a water course. The water dealt with was surface water merely. On this point, see 24 Am. & Eng. Enc. L., pp. 907–921; 10 Allen (Mass.), 106; *Lawrence* v. *Railway Co.*, 16 Q. B., 643; 71 E. C. L., 643; 11 Exchequer, 369; *Jean* v. *Pennsylvania Co.*, 36 N. E. Rep., 159; *Rathke* v. *Gardner*, 134 Mass., 14, s.c. 14 Am. & Eng. R. R. Cas., 282; *Abbott* v. *Railroad Co.*, 83 Mo., 271, s.c. 20 Am. & Eng. R. R. Cas., 103; *Morris* v. *Railroad Co.*, 58 *Ib.*, 78; 71 Mo., 231; 73 Cal., 125; 32 Pac. Rep., 32; Dillon on Mun. Cor., §§ 721, 1038; *Alcorn* v. *Sadler*, 66 Miss., 221. *Sinai* v. *Railroad Co.*, 71 Miss., 547, is clearly distinguishable from this case, and has no application.

3. The injury complained of resulted from an extraordinary flood, and in no view of the case is the defendant liable for failing to provide against such an overflow.    37 N. W. Rep., 725; 34 Am. & Eng. R. R. Cas., 177; 37 *Ib.*, 253; 38 *Ib.*, 136.

*J. A. Blair* and *Brame & Alexander*, for appellee,

Filed separate briefs, making the following points:

1. Whether the injury to plaintiff's land resulted from the act of the defendant, was a question of fact, to be determined by

the jury. *Railroad Co.* v. *Thilman*, 143 Ill., 127; Gould on Waters, § 311.

2. A railroad should be constructed with sufficient provision, not only for all ordinary freshets, but for such unusual and extraordinary floods as may be reasonably anticipated. 107 Mass., 492; 67 Tex., 498; 139 Ill., 9; 75 Hun (N. Y.), 479; 111 N. C., 80.

3. Water which in flood time leaves the channel of a river and overflows the adjacent land, the current extending to the full width of the water, is not surface water, such as to relieve a railroad company of liability for its obstruction. 74 Iowa, 659; 75 *Ib.*, 263; 76 *Ib.*, 360; *Crawford* v. *Rambo*, 44 Ohio, 282; *Spellman* v. *Portage*, 41 Wis., 144; 2 Woods Railway Law, § 269; 12 Am. & Eng. R. R. Cas., 196. See, also, *Railroad Co.* v. *Archibald*, 67 Miss., 38; *Sinai* v. *Railroad Co.*, 71 *Ib.*, 547.

4. If the improper construction or maintenance of the railroad co-operates with other causes to produce the injury, the defendant is liable. *Railroad Co.* v. *Thilman*, 143 Ill., 127; 30 N. Y., 564; 86 Am. Dec., 415.

5. That the overflow in question should have been foreseen and provided against, and that it does not come within the definition of the act of God, see 27 Am. Dec., 518; 46 *Ib.*, 93; 55 *Ib.*, 587; 64 *Ib.*, 394; 71 *Ib.*, 582; 86 *Ib.*, 296 and 415; 95 *Ib.*, 115.

We submit that the testimony shows the railroad was improperly constructed; that there was not sufficient trestling for the back or overflow waters to pass through to the north, and that this caused the injury to plaintiff's lands. It would be a dangerous precedent to hold that a railroad, as in this case, can build its line along a stream, through a fertile valley, and, without making proper provision for the outlet of overflow water, back the same up on the adjacent lands of others. Railroads are built along valleys in the interest of economy of construction. Securing that advantage, they should have due

regard to the rights of others in the construction and maintenance of their roads.

Argued orally by *J. W. Buchanan* and *E. O. Sykes*, for appellant, and *L. Brame*, for appellee.

COOPER, C. J., delivered the opinion of the court.

This is an action brought by the appellee to recover against the appellant damages alleged to have resulted to his lands and crops from an overflow caused by obstructing the waters of Town creek by the roadbed of appellant's railway.

It appears from the evidence that the valley through which Town creek flows is from two to three miles wide, and that the plaintiff's farm is situated adjacent to and in a bend of the creek, and the land for injury to which and the crops thereon this suit is brought is south of the creek, while the roadbed of the defendant company is on the north side, and about three-fourths of a mile distant. The road runs down the valley, and on a line parallel with the general course of the stream, and is upon an embankment from three to four feet high. There are, within the distance of two or three miles opposite the appellee's land, three streams, which flow from the north across the railroad and into Town creek. Where they cross the road, bridges and trestles were put in of sufficient dimensions to permit the free flow of the water coming down these streams, but there was no outlet between these bridges. Town creek is a stream nearly twenty miles long, and empties into the Tombigbee river some three miles east of the plaintiff's farm. Its banks are about twenty feet high, and its channel 125 feet wide. It drains in its course a large section of country, and, in times of heavy rains, its valley is inundated to a greater or less degree annually, and in some years of excessive rains the whole valley is submerged to a depth of from two to four feet on the more elevated portions. The floods of the year 1874, and those of April and July, 1892, were the heaviest ever

known by those familiar with its history. The damages for· which the plaintiff sues resulted from the flood of July, 1892, and consisted in the loss of his crops, and injury to a portion of his cultivated lands, the soil of which was washed away.

The plaintiff's contention is that, but for the railroad embankment, the overflowing waters from Town creek would have passed farther to the north, and then·have returned to the channel of the creek below his farm, or would have flowed down the valley, north of the creek, to the Tombigbee river; that by reason of the roadbed, and a want of proper and sufficient openings therein, the flood water was thrown back and a cross current created, by reason of which the quantity of water south of the creek was materially increased, and that the erosion by which his land was injured resulted from the increased current. The evidence for the plaintiff tends to support his contention. For the defendant, evidence was introduced that before the building of the Mobile & Ohio Railroad, Town creek was worked as a public highway, and depended upon by the community as its means of shipping out crops and getting in supplies; that, after the Mobile & Ohio Railroad was constructed, the creek was abandoned as a highway, until in the year 1883 it was cleaned out by the United States, but, not being greatly used, was again abandoned, and bushes and trees permitted to grow in its channel, and drift to accumulate; that early in the year 1892 a large quantity of timber, growing between the creek and the roadbed, had been felled by the Nettleton Hardwood Company, the lops and tops of which were left on the ground. And so the defendant contended that, if there had in fact been any increase in the quantity of the flood waters upon the valley, it was caused by the obstructions in the channel of the stream, and, if the current was changed, this could as reasonably be attributed to the act of the Nettleton Company in cutting timber and leaving the tops thereof in the valley as to the roadway of the defendant.

For the plaintiff, it is argued that the defendant's roadway

obstructed the waters of a stream which the plaintiff was entitled to have flow according to its usual course; that, though the water, by reason of its volume, had overflowed the banks of Town creek, it was yet a part of that stream, and ought to have been permitted by the defendant to pursue its flow according to nature, unimpeded by any artificial obstruction. For the defendant it is contended that the water, having left the channel of the stream and spread over the adjacent valley, was surface water, and, as such, the defendant might lawfully repel it from its roadway, and for any injury resulting therefrom no right of action exists.

In England it seems to be settled that riparian owners are entitled to have streams to flow in their usual course, whether in times of low or flood water, and that flood water, overflowing the banks, and following the course of the stream along the valley, but without the channel, is a part of the stream, against which one owner may not protect himself to the injury of another. *Rex* v. *Trafford*, 1 B. & Ad., 874; *Attorney-general* v. *Lonsdale*, L. R., 7 Eq., 387; *Mason* v. *Railroad Co.*, L. R., 6 Q. B., 581; *Lawrence* v. *Railway Co.*, 71 Eng. Com. Law, 643.

In *Attorney-general* v. *Lonsdale*, L. R., 7 Eq., 387, while the jurisdiction of the court of equity to grant the injunction prayed against an obstruction in the river was upheld only on the ground that the obstruction impeded navigation, it was said, in effect, that the extent of the injury sustained by the plaintiff, which was nominal, did not affect his right as riparian owner to object to the obstruction placed in the stream by, and which was of great value to, the defendant. There is some conflict of authority in this country, but the decided preponderance is with the English cases. *Crawford* v. *Rambo*, 44 Ohio St., 287; *Barden* v. *City of Portage*, 79 Wis., 126; *O'Connell* v. *Railroad Co.*, 87 Ga., 246, in which many cases are reviewed; *Byrne* v. *Railroad Co.*, 38 Minn., 212; *Curriger* v. *Railroad Co.*, 7 Lea (Tenn.), 388; *Burwell* v. *Hobson*,

12 Grattan (Va.), 322; 65 Am. Dec., 247; *Cairo, etc., Rail-road Co.* v. *Brevoort*, 25 L. R. A., 527, and note thereto. But there are some authorities holding that flood water is surface water. *Morris* v. *Council Bluffs*, 67 Ia., 343; *Railroad Co.* v. *Stevens*, 73 Ind., 278; *Turnpike Co.* v. *Green*, 99 *Ib.*, 205; *Taylor* v. *Fickas*, 64 *Ib.*, 167.

In *Sinai* v. *Railway Co.*, 71 Miss., 547, we had occasion to consider the right of a railway company to obstruct, by its embankment, a body of water consisting of overflow and surface water, and decided that, under the circumstances of that case, the company was liable to an adjoining proprietor for injury caused by throwing back such water on his lands. It may well be doubted whether the radical differences sometimes asserted between the rule of the civil law and that called the common law rule in reference to surface waters exists to the extent indicated by the general language of the text-books and expressions to be found in many decisions.

In *Boyd* v. *Conklin*, 54 Mich., 583 (52 Am. R., 831), Judge Campbell, in an exhaustive and able opinion, affirms that both rules rest upon substantially the same principles, and that from the time of Bracton down, the common law courts have referred to the civil law writers as having defined the subject of rights of water in substantial agreement with the recognized rules of the common law, and concludes his opinion with the declaration that: "There seems to be no reason for attempting to draw distinctions between the civil and the common law on the subject. The authorities recognize the principles as in no sense conventional, or derived from any school of jurisprudence, but as resting on the immunity of one man's property from injury by another in violation of natural justice, and in disregard of the relative conditions arising from its position. Each may do with his own what is consistent with the fair interests of the other." It is a mistake to assume that the common law of England, though adopted and accepted as the law of the state, and though unchanged by statute, is, under all

circumstances and conditions, to be applied as the local common law. In many instances a directly opposite rule is the common law of the state. In *Railroad Co.* v. *Patton,* 31 Miss., 156, the rule of the common law that a man should fence in his cattle was declared to be inapplicable to our condition, and the right of free pasturage was held to exist as a part of our common law, and the duty of fencing them out was devolved upon other landowners desiring to exclude them from cultivated or other lands. See, also, *Green* v. *Weller,* 32 Miss., 650; *Crane* v. *French,* 38 *Ib.,* 503.

In *Sinai* v. *Railroad Co.,* *supra,* we declared that the supposed rule of the common law, under which it was there claimed that each proprietor had the absolute right of excluding surface water from his premises, regardless of any injury to an adjoining proprietor, could not be invoked (if it in fact existed) by a railroad company asserting a right to submerge hundreds of acres of adjoining land with surface water by its embankment. It is apparent that a rule intended to regulate the correlative rights of adjoining landowners whose property is devoted to agriculture or residence purposes, could not be applied to the same extent, either in favor or against, a railroad company owning a strip of land one hundred feet wide and hundreds of miles long. The duty imposed by law upon these corporations to provide suitable and safe roadways, over which ponderous engines and trains are to be driven, carries with it, from necessity, the right to erect great embankments, on which the rails are set, and when this is done with due regard to the rights of owners of adjacent and proximate lands, any necessary and consequent injury to such lands must be borne by the owner. But such companies may not, under a claim of being absolute owners of their roadways, so construct them as to unnecessarily impair the value of adjacent property.

In this view of the relative rights and duties of the parties, it is not of controlling importance to hold that the flood water from which the plaintiff claims to have suffered be dealt with

as surface water, or as the water of a stream, or as a separate and distinct sort.   It cannot be the law, however, in this state that the flood waters of the large streams which are within or along the borders of this state are to be dealt with as the waters of a stream, not to be obstructed, impeded or turned aside under any circumstances, except upon condition that the person so doing shall respond in damages for all injury sustained by another riparian owner and be liable for nominal damages as for the infringement of the legal right of adjacent proprietors who in truth suffer no real injury.   In *Chapman* v. *Copeland*, 55 Miss., 476, it was held that the diversion of a water course gave to the plaintiff a right of action and the recovery of nominal damages, whether any real injury had or had not resulted.

If the waters of the Mississippi river, which at flood sometimes spread in width from twenty to forty miles and flow in a continuous and unbroken body down the valley, are to be dealt with as the waters of a stream, and the whole valley is to be given up as the course way of the stream, the most fertile portion of our state may at once be abandoned.   From Memphis to Vicksburg and from the foot hills to the river, there is not a square yard of land that was not deposited by the overflowing waters of the river.   If the course usually pursued by the ordinary flood waters is the channel of the stream, the whole valley is the channel.   It is evident that to so declare would be to announce as a positive rule of law, and as an indisputable fact, that which is not true, and which, if put into practical operation, would relegate prosperous and fertile districts to the condition of a wilderness.   There are farms innumerable, and railroads, villages, towns and cities situated in a water course if the usual flow of the flood waters of the Mississippi river mark and define the course of that stream.   It is manifest that to apply the strict rules of law controlling in cases of streams and the obstructions thereof to such a river and to such conditions, is, in the very nature of things, impracticable and impossible.   Calling these overwhelming floods surface or channel

water for the purpose of dealing with them under rules appli-
cable to entirely different conditions, advances us no step in the
solution of the questions involved.    We must deal with things,
and not names, and conditions inherently and radically different
cannot be assimilated by mere terminology.

The rules governing the rights and duties of individuals in
reference to waters rest upon principles which underlie very
many other property rights.    At last they depend upon the two
legal maxims that one may make such use as he will of his
own, and that he must so use his own as not to impinge the
legal rights of others.    As to surface water and streams flowing
along their channels, general rules have been formulated, which
are usually applicable, and under which the relative rights and
duties of parties may be adjusted; but to apply these rules to
waters of a radically different class is to measure different con-
ditions by a single standard.    To say that flood waters are
surface waters, and may always be dealt with as such, or that
they may be fenced against as may the waters of the sea, re-
gardless of consequences, would be to give to one riparian
owner the power and right of benefiting and preserving his own
property at the direct expense of another.    But, on the other
hand, if it be the rule that alluvial lands subject to occasional
floodings are to be dealt with as comprising the bed of a stream,
the beneficial ownership therein is practically destroyed in the
interest and for the benefit of other riparian owners.    The
difficulty or impossibility of formulating exact rules by which
the rights of parties under varying circumstances may be ad-
justed is of but little importance in view of the fact that it is
not the less difficult to determine such rights by the applica-
tion of those already existing, and which were formulated for
the control of somewhat analogous, but not similar, conditions.
It is but the usual difficulty of applying legal principles to vary-
ing facts.    Along the lines which separate what is clearly the
exercise of a legal right from the commission of actionable in-
jury, there are often found circumstances in which it cannot be

said with confidence to which class the particular act should be assigned; but this difficulty is not peculiar to the class of cases now under consideration, and suggests rather the propriety of resorting to more flexible, rather than more rigid, rules. But on the clearly shown facts of the case now before us, we think no right of recovery is disclosed, (1) because no failure of duty by the defendant in the construction of its roadway is established, and (2) because no causal connection is proved between the act of the defendant and the injury resulting from the flood. The roadway of the defendant company is not shown to be of sufficient height to obstruct the waters of Town creek so as to deflect them upon the land of the plaintiff at times of ordinary or periodically recurring floods. The witnesses speak of the floods of 1874, and those of April and July, 1892, as having been the highest ever known. It is not claimed by the plaintiff that his lands would not have been submerged by the flood of July (for injury by which he sues) if no railroad had been built in the valley. His contention is that the water was somewhat deeper on his land than it would have been; that it remained longer, and flowed with a stronger current. But it must be borne in mind that all the evidence relates to an exceptional condition of affairs—to a flood equaled but twice and exceeded but once in the memory of the inhabitants—and against such contingency it would, in no event, be negligence not to provide.

But we are not disposed to rest our conclusions on this ground alone, for it involves the concession that, as against the overflowing waters of alluvial streams, a riparian owner may do nothing to protect himself against periodically recurring floods, but, so long as they continue as a part of the moving mass of waters of which the stream is the thread, must give way to them as flowing in a water course. To so hold would, in our opinion, be to apply to bodies of water of a distinctive class rules which were formulated for entirely different conditions, and which, if followed, will lead away from the principles upon which the rules rest. Some part of the valleys of alluvial

streams must be land not within a water course. How much it may be difficult to determine, but surely something may be withdrawn by man from the natural condition of things for his own use. We think it may with safety be said that a valley of a mile, or a mile and a half, along streams of the class of Town creek goes far beyond any requirement of the law for the course of the stream. How much less than this would be sufficient, we need not attempt to declare. That the embankment of the railway has not obstructed the course of the stream is demonstrated by the fact that no injury has resulted to anyone during the ordinary floods, which have passed harmlessly away. It is the extraordinary, the exceptional, the unexpected, which has caused the injury for which the plaintiff sues.

Upon what theory the jury proceeded in finding that the increased depth of the water caused by the embankment was an injury to the standing green crops of the plaintiff, we cannot perceive. Under all the testimony, it is evident that the crops must have been covered with water long before any water deflected by the embankment of the defendant could have reached the land. Of what value a field of corn was in the green ear, and covered by water to a depth of two or three feet, or how the injury thereto was increased by piling upon it a few tuns more of water, it is difficult to see. One witness, it is true, seems to say that the plaintiff's crop was worth fifty cents per bushel in the field, and that it was damaged to that extent by the water forced thereon by the defendant's embankment, but this witness evidently meant that this would have been the value of the crop but for the overflow, and it is not to be doubted that the crop would have been as completely destroyed by the flood if the railroad had never been constructed.

We need not review the evidence to show the want of causal connection between the act of the defendant and the injury to the plaintiff. We dispose of the cause on the ground above indicated—*i. e.*, that on the facts proved no liability rests upon the defendant as for the obstruction of a water course.

*The judgment is reversed.*