The Honorable GORDON R. BENNETT,
District Judge, sitting for MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.
Plaintiff, Formicove, Inc., appeals from a summary judgment granted Burlington Northern, Inc. (BN), by the District Court of the Eighth Judicial District, Cascade County.
BN has a railroad embankment situated between Formicove’s property and the Missouri River. Two culverts run under the embankment. In May of 1980 and June of 1982 Formicove’s basement was flooded by surface waters. Formicove claims BN’s failure to maintain its culverts caused the surface waters to flood Formicove’s basement. Relying upon LeMunyon v. Gallatin Valley Ry. Co. (1921), 60 Mont. 517, 199 P.915, the District Court held that Section 69-14-240, MCA, does not impose a statutory duty on BN with regard to obstruction of surface waters and granted BN summary judgment.
The dispositive issue here is whether the LeMunyon case correctly held that Section 69-14-204, MCA, imposes no statutory duty on a railroad with regard to obstruction of *191 surface waters. We believe the LeMunyon holding is manifestly incorrect and must therefore be overruled.
Relying on definitions of surface waters and watercourses laid down in Fordham v. Northern Pacific Ry. Co. (1904), 30 Mont. 421, 76 P. 1040 (set forth below) and the facts presented, the Court found the water in question was surface water as opposed to water running in a watercourse. Reciting the common law rule to the effect surface water is “the enemy of all mankind,” against which each owner is legally entitled to protect his land, the Court concluded the rule was not altered by what was then Section 4362, Revised Codes, a codification of a 1903 Act, now Section 69-74-240(1), MCA. That Section then provided:
“It shall be the duty of every corporation, company, or person owning or operating any railroad, or branch thereof, in this state, and of any corporation, company, or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable ditches and drains along each side of the roadbed of such road or to construct culverts or openings through such roadbed to connect with ditches or drains, or watercourses, so as to afford sufficient outlet to drain and carry off the water along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; provided that none of the drains or ditches herein referred to shall be required to be constructed by any of the persons or corporations herein named or described, except when required to remove and drain off water accumulated upon property adjacent to or upon the right of way whose natural channel or outlet has been destroyed or impaired by the embankment of such railway so constructed as aforesaid . . . .” (Emphasis added.)
The Court held:
“ . . . That portion of Section 4362, supra included within the exception or proviso, which mentions ‘natural channel’ *192 or ‘outlet’ refers back to the first or main body of the section, fixing the requirements of railroad corporations as to ditches, drains, and watercourses, and means ‘ditches,’ ‘drains,’ or ‘watercourses’ as therein expressed, and hence the provisions of this section likewise afford no relief to the respondent.” 60 Mont, at 525, 199 P. at 917.
This view has been followed for more than sixty-two years.
Where the intention of the legislature can be determined from the plain meaning of words used in a statute, courts may not go further and apply any other means of interpretation. Tongue River Elec. Coop. v. Mont. Power Co. (Mont. 1981), [195 Mont. 511,] 636 P.2d 862, 38 St.Rep. 2032.
In construing a statute, our duty is simply to ascertain and declare what is in terms or in substance contained therein. We may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.
The statutory language before the proviso required construction and maintenance of ditches and drains to connect with “ditches or drains or watercourses” to carry off water impounded by a railroad embankment. The proviso was a limitation on the general rule: Drains and ditches will be required only to drain off accumulated water whose “natural channel or outlet” has been destroyed or impaired by the embankment. The LeMunyon opinion equated the words “natural channel or outlet” in the proviso to the words “ditches or drains or watercourses” in the principal clause and apparently concluded from this that the word “watercourses” was intended to be included in the proviso and that therefore the statute did not contemplate surface water, only watercourses.
This severely limiting construction overlooks the obvious principal purpose of the statute, which was to change the common law rule as it applied to railroads. The statute speaks not only of “watercourses,” but “ditches,” “drains,” “culverts,” “openings,” and “outlets” to drain and carry off water “ . . . whenever the draining of such water has been *193 obstructed” and removing and draining off water accumulated upon nonrailroad property. Clearly the statute was intended to deal with impounded water of any kind, without regard to the nice distinction made between surface water and a watercourse in Fordham, 30 Mont, at 431, 76 P. at 1043:
“ ... If the flood water becomes severed from the main current, or leaves the same never to return, and spreads out over the lower ground, it becomes surface water. But if it forms a continuous body with the water flowing in the ordinary channel, or if it departs from such channel presently to return, it is to be regarded as still a part of the stream.
While it might be said, as the commissioner did, that the proviso words “natural channel or outlet” refer to the principal clause, it is not possible to comprehend from his opinion how he equated those words to the words “ditches, drains or watercourses” in the principal clause. The context is not even the same. The latter words are used to describe the places to which the vagrant water is to be returned. The former words are used to describe the places from which the vagrant water came as a result of the embankment. There is no rule of statutory construction that would approve of this contextual flip-flop.
Even if by this literary legerdemain one reads the words “ditches or drains or watercourses” into the proviso to substitute for the word “natural channel or outlet” set forth therein by the legislature, the limitation imposed by the LeMunyon court decision could not be sustained. To do so we would be required to give meaning to the words “watercourses” and to ignore the words ditches and drains. In constructing a statute we are required to consider it as a whole and, if possible, give meaning to every word contained therein. Section 1-2-101, MCA; State ex rel. Cashmore v. Anderson (1972), 160 Mont. 175, 500 P.2d 921. In doing so here, we would have to recognize that ditches and drains carry surface waters as well as water in watercourses as de *194 fined in Fordham, supra. Thus, even if the tortured construction rendered in LeMunyon is accepted, it would not support conclusion that the proviso limited application of the statute to watercourses.
We must assume that the legislature does not perform idle acts. Section 1-3-223, MCA. An interpretation that gives effect is always preferred to one that makes a statute void or treats a statute as mere surplusage. American Linen Supply v. Dept. of Revenue (Mont. 1980), 617 P.2d 131, 37 St.Rep. 1707. The LeMunyon construction reduced the statute to mere surplusage, making it nothing more than a codification of the common enemy rule.
Viewing the statute as written, rather than as artificially reconstructed, we reach the unavoidable conclusion that the legislature intended to change the existing law and set aside the common enemy rule as applied to railroad embankments in favor of the adopted maxim, “[o]ne must so use his own rights as not to infringe upon the rights of another.” Section 1-3-205, MCA. Our conclusion is reinforced by interpretations of a comparable Missouri statute by that state’s courts (Cox v. Hannibal & St. J. R. Co. (1903), 174 Mo. 588, 74 S.W. 854, and Murphy v. St. Louis-San Francisco R. Co. (1920), 205 Mo.App. 682, 226 S.W. 637) and confirmed by the United States Supreme Court (Chicago & Alton R. Co. v. Tranberger (1915), 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 1204).
Section 69-14-240(1), MCA, is the same as Section 4362 Revised Codes, the statute construed by the LeMunyon court, except for the conversion of the proviso clause into a separate sentence during codification.
It is apparent then that Section 69-14-240, MCA, was misconstrued LeMunyon.
BN nevertheless contends that under the doctrine of stare decisis we must follow this prior contrary holding. While stare decisis is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment, stare decisis does not require that we follow a mani *195 festly wrong decision. State v. Fischl (1933), 94 Mont. 92, 20 P.2d 1057; State v. District Court of Fourth Judicial Dist. (1965), 145 Mont. 287, 400 P.2d 648. See also, Jepson v. Department of Labor & Industries (1977), 89 Wash.2d 394, 573 P.2d 10. LeMunyon is therefore overruled insofar as it held that Section 69-14-240, MCA, imposes no duty on a railroad for obstruction of surface waters.
Reversed and remanded.
MR. JUSTICES HARRISON, SHEA, SHEEHY and The Honorable PETER L. RAPKOCH, District Judge, sitting for MR. JUSTICE MORRISON concur.