47 383
69 571
69 573
69 578
47 383
174s ¹605

LUCIEN E. BYRNE, Respondent, v. THE KEOKUK & WESTERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 5, 1892.

1. **Railroads:** STATUTORY LIABILITY FOR FAILURE TO MAINTAIN DITCHES AND DRAINS FOR SURFACE WATERS. The statutory liability of a railway company for a failure to construct ditches and drains to carry off water along the railroad, wherever the drainage has been obstructed or rendered necessary by the construction of the railroad ( R. S. 1889, sec. 2614 ), establishes a different rule than the one which would obtain at common law. The statutory liability results from the mere failure of the railway company to construct the requisite ditches and drains, and without the concurrence of further actual negligence on its part.

2. —— : —— : CONSTRUCTION OF STATUTE. The statute requires the construction and maintenance of " suitable ditches and drains along each side of the roadbed of such railroad to connect with ditches, drains or water courses, so as to afford sufficient outlet to drain and carry off the water." In the case at bar there was at the point of overflow a swale or depression of the land ; this led towards a river, which was the natural water course, but it did not have a well-defined channel. *Held, per curiam,* that this depression did not constitute a natural drain within the meaning of the statute, since it was necessary that there should be a well-defined channel or receptacle for the drainage of water in order to constitute either a drain or ditch within the meaning of the statute.

3. —— : —— : ——. But *held,* by ROMBAUER, P. J., *dissenting,* that said swale or depression constituted a natural drain within the meaning of the statute, since it was well defined and led with a continual fall to said river.

*Appeal from the Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

Byrne v. The Keokuk & W. Ry. Co.

*E. T. Hughes*, for appellant.

(1)  The evidence shows that the alleged injury was caused by surface water flowing through a natural drain or ravine passing from the north of appellant's railroad, and across its track, to the south edge of its right of way, and entering the leased ground in question in its natural course or direction to another drain or ditch in the bottom leading on to the main channel of the river, and is, therefore, *damnum absque injuria*. *Jones v. Hamnoral*, 55 Mo. 462 ; *Hasher v. Railroad*, 60 Mo. 329 ; *Clark v. Railroad*, 36 Mo. 224 ; 13 Allen, 259 ; 27 Wis. 656 ; 31 N. J. Law, 351 ; 50 N. H. 439 ; 73 Ind. 278 ; Angel on Water Courses, 120. (2)  The alleged injury was mere surface water and accumulation of same. *Benson v. Railroad*, 78 Mo. 514 ; *Hoyt v. City of Hudson*, 27 Wis. 661. (3)  The second instruction given was erroneous, for it required the company to carry the water on the north side of its track to another drain or ditch further west, irrespective of the question whether or not it was negligence to permit it to leave defendant's track and right of way at the point in question ; and the third instruction given was erroneous, because it only defined a "water course" without also defining drains and ditches, and from which a jury would infer that the railroad company must construct drains and ditches to connect with a "water course." *Benson v. Railroad, supra*. (4)  Appellant's fifth instruction should have been given, for it submits the question to the jury whether or not appellant permitted the water to cross its track and right of way at or near a natural stream, drain or draw, and pass off "in its natural path." *Benson v. Railroad, supra*.

*N. M. Pettingill*, for respondent.

The case comes within the statute. R. S., sec. 2614. The authorities cited by defendant's counsel are not

applicable to cases of this character. *Abbott v. Railroad*, 93 Mo. 273, and especially page 286 of that decision. It was not necessary to define the words ditches and drains by instructions. Words of the English language when used in no peculiar technical sense need no such explanation. *Holland v. McCarty*, 24 Mo. App. 112. Under the statement and the evidence the instructions given by the court presented the issues fairly to the jury.

BIGGS, J.—The plaintiff obtained a judgment before a justice of the peace and also in the circuit court, and the defendant by successive appeals has brought the case here for review. The plaintiff seeks to recover damages to his growing crops from the overflow of surface water. The plaintiff in his statement alleged that the overflow and the consequent damage to his growing crops grew out of the failure of the defendant to comply with section 2614 of the Revised Statutes which reads: "It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state, and of any corporation, company or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or water courses, so as to afford sufficient outlet to drain and carry off the water along such railroad wherever the draining of such water has been obstructed or rendered necessary by the construction of such railroad. * * * And any corporation, company or person failing to comply with the provisions of this section shall incur a penalty not to exceed $500, and be liable for all damages done by said neglect of duty."

It appears by the evidence that at the point of overflow the defendant's railroad is constructed east and

west along the edge of the bottom land along the Fabius river. On the north side of the roadbed, there are hills with depressions or hollows at short intervals, and on the south side are level bottom lands, the road being constructed at or near the base of the hills. It seems to be conceded that the surface water running off the hills for seven or eight hundred feet east of the land, where the plaintiff's crops were planted, was carried west by a ditch along the north side of the defendant's railroad track to a point about one hundred feet east of the east line of the land cultivated by the plaintiff, and, on account of a heavy rain, the accumulated water, having no other outlet, passed over the railroad track and was thus discharged over plaintiff's crops, causing the damage sued for. The plaintiff also introduced evidence tending to show that there was a ditch or drain about one hundred yards further west of the point of overflow, into which ditch or drain, the water in the ditch north of the railroad track could have been discharged. On the other hand the defendant's testimony tended to show that, at or near the place where the water broke over the track, there is a natural swale or depression, which extends in a southwesterly direction through the land where plaintiff's crops were planted; but we cannot gather from the record that there was at the time of the overflow, or had been at any time, a well defined or permanent ditch or drain along the course taken by the water over the plaintiff's lands. The land was in cultivation and had been for several years. There was simply a depression, and the only water passing over the land, previous to the construction of the railroad, was the surface water from the adjacent hills, and this was inclined to spread over the ground and was not confined to a particular channel. The evidence also tended to show that, until the construction of the railroad, the surface water to the east of the point of overflow did not touch the plaintiff's land, but it passed over the adjacent bottom lands to the Fabius river.

Byrne v. The Keokuk & W. Ry. Co.

The court instructed the jury to the effect .that, if they found that the defendant's roadbed was so constructed as to obstruct the natural flow of surface water, and to cause the same to accumulate on the north side of the roadbed, and that the defendant negligently and wrongfully failed to keep open and maintain a suitable ditch or ditches along the sides of its road so as to carry the water to some ditch, drain or other water course, and that by reason of such failure the plaintiff's crops were overflowed, then the finding should be for the plaintiff.

For the defendant the court instructed that the law only required the defendant to construct ditches along the sides of its road of sufficient capacity to take care of the usual flow of surface water, and if the jury found that the ditches provided were sufficient for that purpose, and the overflow was produced by an unusual rain storm, then the finding must be for the defendant. The defendant also asked the court, but the court refused to instruct on the theory that the plaintiff could not recover, unless it was found that the defendant, in turning the accumulated surface water over the plaintiff's land, acted negligently. And the court also refused to instruct that, if there was a natural drain at the place in question, then the defendant was not liable.

The plaintiff's action was brought and tried on the theory that the defendant, in the construction of its road, had failed to comply with a statutory duty, and that such failure caused the damage to the plaintiff's crops. The instructions of the court were drawn on that idea. That the court was right in this, will better appear from a discussion of the instructions asked by the defendant.

The common-law rule as to surface water seems now to be the rule in this state; that is, that surface water is to be regarded as a "common enemy," and that the owner of land has the right to so improve his land as to

turn surface water onto the estate of his neighbor, provided he does not do it in a negligent manner. This is the principle sought to be declared in the defendant's first instruction which the court refused. This instruction, or one something like it, would be applicable in a common-law action for damages for collecting surface water and negligently and wrongfully discharging it in large volumes, and in a manner in which it was not accustomed to go, onto adjacent land. *Benson v. Railroad*, 78 Mo. 504; *Rychlicke v. City of St. Louis*, 98 Mo. 497; *Paddock v. Somes*, 102 Mo. 226. But, as we have shown, the present action was brought for damages resulting from a violation of the statute, and the plaintiff's evidence was directed solely to such a case; hence it was useless for the court to instruct as to the defendant's rights under the general law touching the diversion of surface water, for the reason that the statute, in cases prosecuted under it, furnishes a different rule by which the liability of railroad companies is to be determined. Nor do we think that the argument of the defendant's counsel, that the statute was only intended to cover cases of standing water, which might affect the health of the community, is a sound one. It was also the object of the legislature to minimize the damage resulting to adjacent land-owners from the obstruction or diversion of surface water, by compelling railroad companies, within reasonable limits, to connect their side ditches with other natural or artificial drains. As a matter of course, a reasonable construction of the statute would not compel a railroad company to dig a ditch or ditches through a mountain, or to incur any other unreasonable expense in complying with its terms. In the case before us the evidence tended to show that the law could readily have been complied with. We, therefore, conclude that the court did not err in its instructions; neither did it commit error in refusing the defendant's first instruction.

The other instructions asked by the defendant, and which the court refused, proceeded upon the idea that there was evidence tending to prove that, at the place of the overflow, there was a *drain* extending south through the plaintiff's land, and that the accumulated surface water had been discharged into this drain. The evidence of both sides tended to show that from the point of overflow there was a depression or swale, without a well-defined channel, extending in a southwesterly direction through the land leased by the plaintiff, and that the water after passing over the railroad track passed along this depression, thereby overflowing and injuring the plaintiff's growing crops.

If a hollow or depression as above described is a *drain*, within the meaning of the statute, then the defendant's instructions ought to have been given. The statute uses the words "drain" and "ditch." In common parlance the two words are used interchangeably, but technically speaking each has its own appropriate meaning, when used in certain connections. The word ditch is mostly used to designate a trench on the surface of the ground, and the word drain is commonly used in connection with a sewer, sink or other under-surface drain. Outside of this we can find no distinctive difference in the meaning of the two words. But, in order to constitute either, there must be a well-defined channel or receptacle for the drainage of water. A mere depression in the surface of the earth, or a swale, with no channel or banks, cannot be called either a ditch or drain. We, therefore, conclude that the court did right in refusing the defendant's instructions.

It is also contended that the instructions of the court are faulty in that the court failed to define the words ditches and drains, as used in the court's instructions. If the court erred in this, it presents only a case of non-direction, of which the defendant cannot complain.

We have found nothing in the record which would justify us in reversing the judgment. With the concurrence of the other judges it will be affirmed. It will be so ordered. Judge ROMBAUER concurs only in the result.

ROMBAUER, P. J. ( *concurring* ).—I concur in the result reached. The recovery below was for the sum of $5, and the plaintiff's damages to that extent were clearly shown. There was evidence, which, if found true, would have made the defendant liable at common law, and the action does not in terms purport to be based on the statute, even if it can be construed to be a statutory action. The case is one wherein the errors of the trial court, conceding that there were such errors, did not "materially affect the merits," and hence we would not be warranted in remanding the case for a new trial, wherein the same result seems almost unavoidable.

I cannot concur, however, in the construction placed upon the statute by my associates. In my opinion the statute is leveled against the negligent obstruction of surface water, and not against its negligent discharge. It requires the construction of ditches and drains on each side of the railroad to connect with ditches, drains and water courses for the purpose of carrying off the water. Where the water naturally drains off from either side of the road, an artificial drain is not required. The construction of a railroad bank on the side of a slope necessarily obstructs the surface water on the upper side of the bank, but the statute does not contemplate that the railroad company in such a case is bound to build its track on an open trestle, or else connect each of its culverts, wherever the water passes through its bank from one side to the other, with an artificial ditch or drain leading to a water course, or if it fails to do so subject itself to a penalty of $500.

Webster defines a drain as "that by means of which anything is drained." When the statute speaks of

connecting with a drain, it is a drain in the above sense, which it means. Such a drain may be either natural or artificial. To hold that the railroad company is bound to build an artificial connecting drain, wherever the surface water is let through its bank, would make it liable in a heavy penalty for a condition of things over which it has no control. It cannot enter upon another man's land for the purpose of constructing an artificiat drain thereon to connect with its own drain, and thus take the water to a water course, and if it constructs a drain which terminates at the boundary line of its right of way, which connects with no other drain, it affects no useful end.

That the railroad company, in the case at bar, permitted the water to run over its bank, at a place where there was a well-defined drain or draw, with a continual fall to the Fabius river, which was a natural water course, is conceded by all the evidence. Since the ra'lroad company could not enter upon the plaintiff's land for the purpose of continuing that drain or draw in the form of an artificial drain or ditch to the Fabius river, it wâs in my opinion not liable under the statute, although its liability at common law for a negligent collection and discharge of water remained, and furnished an ample remedy.