# COX v. HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

### Division Two, May 19, 1903.

1. **Amending Laws:** STRIKING OUT AND INSERTING WORDS. Where the amendatory act in its prefatory clause says that a certain section of the Revised Statutes is amended by adding certain words thereto, naming them, and then the whole section is set out in full, that clause of the Constitution referring to the amendment of statutes by inserting or striking out words, is fully complied with.

2. **Constitutionality of Law:** TWO SUBJECTS: GERMANE. If the purpose of the act is to prevent injury or destruction to farm lands and property along the track of a railroad, by fire and water, it can not be said to be contrary to the Constitution which provides that no bill "shall contain more than one subject," if the provisions of the act are not incongruous but germane to its title, and fairly relate to the same subject, have a natural connection with it, and afford a means of accomplishing it.

3. ———: ———: FIRE AND WATER. The title was, "an act to amend section 810 . . . relating to private corporations, railroad companies," and the act makes it the duty of railroad companies, first, to clear up and remove all vegetation and undergrowth upon the right of way, and, second, to construct ditches and drains to carry off surface waters obstructed by its roadbed, and subjects the company to the same penalty and liability for damages for failure to do either. *Held*, that the act is not unconstitutional as embracing two subjects.

4. ———: DAMAGES TO CROPS: SUIT UNDER FORMER ACT. But whether the Act of 1883 is or is not unconstitutional as embracing two subjects, has nothing to do with this suit, since it is not a suit for the penalty of that act, but is an action under the Act of 1874 (sec. 2614, R. S. 1889), for damages to plaintiff's growing crop occasioned by the alleged negligence of the railroad company to construct suitable ditches and drains along its roadbed for carrying off the waters along the road.

5. Railroad: FAILURE TO CONSTRUCT DITCHES: SUIT BY PRIVATE CITIZENS. A private citizen whose crops have been injured by the failure of a railroad company to construct suitable ditches and drains along its road for carrying off the waters, can maintain a suit against the railroad for damages caused to his crops for its failure to construct such ditches.

6. ———: ———: ———: OVERFLOW OR SURFACE WATER. In such suit it is immaterial whether the water which destroyed the crops was overflow or surface water, if the railroad company by constructing a ditch along both sides of the track could have provided an outlet for the water.

7. Water: COMMON-LAW RULE. The common-law rule as to surface water prevails in this State, which is, that owners of lands may improve them by obstructing or diverting it, provided that be not done in a reckless manner resulting in injury to some other person.

8. ———: ———: APPLICATION TO RAILROADS: MEANING OF STATUTE. The statute requiring railroad companies to construct ditches along their roadbeds to carry off the waters, is an innovation upon the common law, and clearly has reference to overflow water, which is surface water, as well as to water from rainfalls and melted snow.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus*, Judge.

AFFIRMED.

*Mosman & Ryan* and *Simrall & Trimble* for appellant; *O. M. Spencer* of counsel.

(1)    Defendant's objection to the admission of any evidence under the petition, on the ground that the amendatory Act of 1883 was unconstitutional, null and void, should have been sustained.    It was error to overrule such objection.    (a)    The Act of 1883 is unconstitutional in this, that the words to be inserted in section 810, Revised Statutes 1879, by said amendment, and which were in fact inserted in said section as it appears in said act, were not set forth in full in the prefatory clause of said Act of 1883 as required by section 34 of article 4 of the Constitution, which provides that, "The words to be inserted . . . together with the act or section to be amended, shall be set forth in full as amended."    Our contention is, that these words mean, and can be satisfied only by setting forth the words "to be inserted" in the prefatory clause of the act, and again setting them forth in their proper place in the section as amended.    (b)    We are aware that this court, in Morrison v. Railroad, 96 Mo. 602, used language *in arguendo* that would seem to militate against this view, but as the amendment was not made by inserting words in that case, the precise point we raise could not be presented, and therefore was not decided.    Besides this, the court in that case followed Mayor v. Trigg, 46 Mo. 288, and failed to note the difference between old section 35 of article 4 of the Constitution of 1865, and section 34 of article 4 of the Constitution of 1875.    (c)    It will not do to say that in the case at bar the amendment was by adding words, not by inserting words, and hence the command of the Constitution does not apply.    Words added to the end of a section are as much inserted in that section as they would be if placed between two words in the middle of a line.    Besides, the provision is remedial and protective, and the words used must

be so construed as to promote the spirit and purpose of the section. Carson-Rand v. Stone, 129 Mo. 381; State v. King, 44 Mo. 283; State ex rel. v. Hostetter, 137 Mo. 649. (2) The amendatory law, as stated in the prefatory clause, was designed to cast upon railway companies the duty of removing or destroying all dead and dry vegetation and undergrowth upon their right of way lands, and it was enforced by an appropriate penalty, and by making the company liable for all damages done by the neglect of the duty to burn or remove the vegetation. But when the added words of the prefatory clause appeared in the section as amended, the words "so to clear up and burn such undergrowth and vegetation as required by," were stricken out, and in place of them was substituted the words "to comply with the provisions of," thus making it read "any corporation, company or person failing to comply with the provision of this section, shall incur a penalty not to exceed $500, and be liable for all damages done by said neglect of duty." As the existing section contained requirements as to ditches and drains, the effect of this change was to make the penalty apply to the failure to construct ditches and drains, as well as to the failure to destroy vegetation, and to give a right of action for failing to construct ditches, a thing not intended at all. We contend that this, to the members, unlooked-for result, was a fraud upon them, and an imposition on the people, and that the act, never having received legislative action, is null and void. (3) (a) Where the only title given is "an act to amend section 810," Revised Statutes 1879, without any words descriptive of the amendatory act, no legislation can be enacted that does not deal exclusively with, and is not germane to the original subject-matter of the section, and as the burning or removal of vegetation is not germane to the construction of ditches, the Act of 1883 is necessarily unconstitutional and void. State ex rel. v. Heege, 135 Mo. 110; State

v. Saline County, 51 Mo. 376. The title to the Act of
1883 gave no hint or suggestion that the section was
to be amended by adding matter relating to an entirely
new subject, wholly foreign to the original subject-mat-
ter of the section, and therefore the Act of 1883 is un-
constitutional and void. (b) The rule of law is that
where the parts of a law "sound and unsound, are so
mutually related, so blended together, as to consti-
tute an entirety, making it evident that unless the act
be carried into effect as a whole, it could not have re-
ceived the legislation," the whole act must fail. State
v. Bockstruck, 136 Mo. 354. (4) As the Act of 1883
was unconstitutional, null and void for the foregoing
reasons, the plaintiff is not entitled to recover. His
right of action was given by the Act of 1883, and when
that act fails, his right to maintain an action fails with
it. He is then driven to pursue the remedies provided
by section 810 as it stood in the revision of 1879, and
can only proceed in the county court to secure the con-
struction of the ditches and drains. The act of 1874
was in derogation of the common law. It created new
rights which did not exist at common law. By the
common law surface water was a common enemy which
all might fight in their own way. Moss v. Railroad,
85 Mo. 86; Schnieder v. Railroad, 29 Mo. App. 75;
Gray v. Schraber, 58 Mo. App. 173. This act changed
the common law so far as relates to the construction
of railroad embankments which obstructed the passage
of surface water, and made it the duty of the company
to construct ditches and drains to carry off such water,
and to enforce this new duty the act provided a special
remedy. The rule of law is that where a new duty
which did not exist at common law is created by stat-
ute, and in the same act a remedy is provided for the
enforcement of that duty, the special remedy must be
pursued, and resort can not be had to the remedies pro-
vided by the common law. Baker v. Railroad, 36 Mo.

543; City v. Henry County, 115 Mo. 569; Hickman v. Kansas City, 120 Mo. 118.

*R. E. Ward* and *Claude Hardwicke* for respondent.

It is immaterial whether or not the amendment of 1883 was constitutional. The original act, before such amendment, made it the duty of defendant to construct and maintain the ditch. R. S. 1879, sec. 810. If such amendment was constitutional, then this was an action under the statute as amended; if such amendment was not constitutional, then this was a common-law action for damages caused by the neglect of defendant to perform a duty imposed by the Act of 1874. Failure to perform a duty enjoined by statute or ordinance is negligence as a matter of law for which a recovery may be had by any person injured by reason thereof. Hanlon v. Railroad, 104 Mo. 381; Gratiot v. Railroad, 116 Mo. 450. The Act of 1874, while it enjoined on railroads the duty of constructing and maintaining ditches and drains, did not provide a remedy for persons injured by neglect of performing such duty. It provided that the county court, on the petition of twenty landowners along the road in the county, might construct the ditches and drains, but that was no more a remedy for persons injured by such neglect than the imposition of a fine on an engineer, by a city, would be a remedy to persons injured by a failure of the engineer to comply with an ordinance regulating speed of trains. "Where a statute is manifestly intended for the protection and benefit of individuals, and fails to supply an adequate remedy for individuals injured by violation thereof, the common law, when an individual is injured by a breach of the duty imposed by the statute, will supply a remedy for such individual." Cooley on Torts (2 Ed.), p. 790. The mere fact that a county court, if twenty landowners along the rail-

Vol 174 mo—38.

road in the county could have been found who would
sign a petition therefor, would have been authorized
to construct the drains, was no adequate remedy, nor
a remedy, for parties injured by the neglect of a rail-
road company to perform the duty the law imposed.
If neither the statute nor the common law gave parties
injured by a neglect of such duty a right to sue for
damages, then there was no remedy whatever for per-
sons injured by a neglect of such duty by railroads in
counties where there are not as many as twenty owners
of land fronting the road in the county, as is the case
with three railroads in this county; or in counties where
there are not twenty such landowners who are willing
to sign the petition.  The right of persons injured to
sue for damages for failure to comply with the duty
imposed by the Act of 1874, was recognized by the
courts in this State before the amendment of 1883.
Field v. Railroad, 21 Mo. App. 600.

BURGESS, J.—This is an action to recover dam-
ages done to plaintiff's crops by water, in the years 1896
and 1897, by reason of the failure of the defendant
company to construct and maintain ditches and drains
along the sides of its roadbed as required by section
810, Revised Statutes 1879, amended by the Act of 1883.
[Laws 1883, p. 50; R. S. 1889, sec. 2614.]

The answer of the defendant set up the incorpora-
tion of the Kansas City, Galveston & Lake Superior
Railroad Company; the change of its name to the Kan-
sas City & Cameron Railroad Company; its acquisition
of the title to the right of way through the land de-
scribed in the petition in 1860; the construction of its
roadbed through said lands in 1860 on a raised bed
or embankment; that said railroad company shortly
after began the operation of its railroad, and continued
to maintain said roadbed, and to operate its trains till
the year 1870, when it was consolidated with, and be-
came a part of the Hannibal & St. Joseph Railroad

Company; that the defendant company succeeded to all the property, rights, privileges, franchises and immunities of the Kansas City & Cameron Railroad Company, took possession of said right of way, roadbed and property, and has ever since owned, held, possessed, operated, maintained and enjoyed said railroad embankment as originally constructed by the Kansas City & Cameron Railroad Company. Said answer further set up a general denial of all the allegations of the petition not expressly admitted, and pleaded a prescriptive right to maintain said roadbed in the form and condition in which it was originally constructed by said Kansas City & Cameron Railroad Company. The defendant in its answer further stated that the embankment of said roadbed as originally constructed was a permanent structure; that any damages resulting from its construction accrued at the time it was constructed, and belonged to the persons then owing the lands, and the defendant pleads the statute of limitation of ten years in bar of said action.

On motion of plaintiff the court struck out of the said answer the plea of prescriptive right to maintain said embankment, and the plea of the statute of limitations, to which ruling the defendant saved exception.

The reply was a general denial.

The facts are, that the land upon which the crops in question were grown is bottom land, and that portion of it cultivated by plaintiff, as appears from the accompanying map, lies between the railroad track and

North

Little Shoal Creek

Wabash R.R.

Big Shoal Creek

Little Shoal Creek

Big Shoal Creek

Township Line

Shoal Creek

Wabash R.R.

South

Plat of Sec 36 and
Section North half Township
56 and 57
Clay County Mo.

Little Shoal, indicated by that part which is shaded. The land along the bank of this creek was higher than the balance of the land where the crops grew. Defendant's roadbed was constructed upon an embankment extending from Little Shoal creek, to Big Shoal creek, which for some years before the injury complained of, had no openings therein through which the water could flow. Practically all of the land lying west of said roadbed between the points where it crossed said creeks, drained eastwardly, and the waters therefrom drained into a gulch which passes through the culverts under the Wabash, and Chicago, Milwaukee & St. Paul railroads, and then into Big Shoal creek, at a point nearly southeast of the southeast corner of the land plaintiff cultivated. The present banks of Big Shoal creek where said gulch drains into it, was formerly the bank of the Missouri river, which has since receded eastward.

The railroad of defendant was, at the time this cause of action accrued, so maintained that its embankment obstructed the course of drainage of lands fronting the west side of said railroad for a distance of 3,900 feet; so that the waters from said land would accumulate against said embankment and spread out, covering for that distance the public road, which adjoins and parallels the railroad, and the land plaintiff cultivated, for a distance of 1,900 feet fronting the railroad and extending some distance back into his field.

The railroad bed was thrown up in 1860, remained in that state during the war, and was completed in 1865, 1866 or 1867. About the year 1875 the public road was changed and located fifty feet west of the defendant's right of way, and built up eight inches or a foot for two or three hundred yards by being corduroyed. There was evidence tending to show that a clump of trees or "thicket" stood a hundred yards or so north of the southeast corner of the land, and the lowest place

in the field was two or two hundred and fifty yards northwest of this thicket.

The water which destroyed the plaintiff's crops came out of Little Shoal creek at the sharp bend in the stream just below (west of) the railroad bridge, and at points below that bend, and flowed for half a mile south and southeast across the field to the depression or basin in the southeast part of the land, covering the wagon road and right of way, settled against the embankment of defendant's roadbed. In 1896 and 1897, from twenty to forty acres of land was covered by these flood waters of Little Shoal creek which stood two feet deep in the deepest place in the field.

As to the sufficiency of the railroad ditch to carry off these flood waters, the evidence was conflicting, the evidence for plaintiff tending to show that the water stood two feet deep in his field when it had ceased to flow out through the railroad ditch; while a committee of four citizens who went there expressly to examine the ditch, and other witnesses (for defendant) testified that the ditch was sufficient to drain all water off the right of way, though it would not drain the basin or depression in plaintiff's field, for want of lateral ditches across the county road to connect the basin with the railroad ditch and let the water drain off through that ditch.

The evidence tended to show that the waters of Little Shoal creek were backed up, that Big Shoal creek, into which Little Shoal creek emptied opposite this land, was pretty high.

Plaintiff's witness Hughes said: "There was a heavier rain in 1896 in Big Shoal than in Little Shoal."

"Q. And Little Shoal was unable to dispose of its waters because of the height of water in Big Shoal? A. Yes, sir. I don't think it could.

"Q. And the waters of Big Shoal were bankfull and there was no place to dispose of the waters of Lit-

tle Shoal. A. No, sir. The waters of Big Shoal backed up that way."

Mr. Cox, the plaintiff, said:

"Q. Do you know anything of the state of the waters in Big Shoal creek? A. It was pretty high, I suppose.

"Q. Was it not pretty high in the Missouri river, and was not Big Shoal creek backed? A. She might have been backed up some. I could not say."

Carter, for the defendant, said: "The Missouri river in June, 1896, was high and the water was backed up over a little field south of the bridge over Big Shoal."

The plaintiff's witness, Hughes, was the agent for the land, which was owned by the Phillips Investment Company. He rented the land to the plaintiff, and he and plaintiff, and a man named Babcock, had attempted to levee the bank of Little Shoal creek from the railroad bridge down stream several hundred yards to keep out these floods, the first levee being constructed in 1895. He swears that the waters broke over the levees and also overflowed the banks of Little Shoal below, where there were no levees.

The plaintiff and Hughes testified that the water falling on the land in rainfalls never interfered with the cultivation of this land.

Defendant showed that the seasons of 1896 and 1897 were very wet, and that the rainstorms occurring at the time the crops were destroyed in 1896 and 1897 were storms of a very extraordinary and unusual character, and the amount of rainfall very unusual and extraordinary. The trial resulted in a verdict and judgment in favor of plaintiff in the sum of $400, from which defendant appeals.

On the trial the defendant objected to any evidence under the petition, because the Act of 1883, amending section 810, Revised Statutes 1879, was unconstitutional and void, because it violates section 28 of article 4 of

the Constitution of this State which prohibits any act of the Legislature from pertaining to more than one subject, which shall be clearly expressed in the title; and also, because said act is in conflict with section 34 of the same article which requires that where an amendment to a section is made by inserting words, the words to be inserted, as well as the section as amended, shall be set out; and defendant further objected because said act if applied to the defendant was retrospective, and interfered with and destroyed the vested rights of the defendant. The court overruled said objections, and defendant saved exceptions.

For defendant it is said that the Act of 1883 is unconstitutional, in that the words to be inserted in section 810, Revised Statutes 1879, by said amendment, and which were in fact inserted in said section as it appears in said act, were not set forth in full, in the prefatory clause of said act as required by section 34 of article 4 of the Constitution, which provides that, "The words to be inserted . . . together with the act or section amended, shall be set forth in full as amended." The contention is that these words mean, and can be satisfied only by setting forth the words "to be inserted," in the prefatory clause of the act, and again setting them forth in their proper place in the section as amended; that the act being unconstitutional as amended, the defendant's objection to the admission of any evidence in support of the petition on that ground should have been sustained. Section 34 of article 4 of the Constitution provides:

"No act shall be amended by providing that designated words thereof be stricken out, or that designated words be inserted, or that designated words be stricken out and others inserted in lieu thereof; but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended."

The Act of 1883 purports to amend section 810, Revised Statutes 1879. The amendatory act says: "That section 810, chapter 21, article 2, of the Revised Statutes of the State of Missouri, be and the same is hereby amended by adding to said section the following words:" The whole section is then set out in full. In speaking of this mode of amending the statute, BLACK, J., in speaking for the court in the case of Morrison v. Railroad, 96 Mo. 602, said:

"Under this constitutional provision, it is quite common for the Legislature to first state that certain words of a specific section are stricken out and others inserted, and then set out in full the section as amended, but the Constitution makes no such requirement. In former times, a practice had grown up of amending an act, or a section of an act, simply by saying that designated words were stricken out, or that they were stricken out and others inserted, leaving it to the reader to examine both acts and make the erasure and substitution. This practice the Constitution prohibits, and when a section of an existing statute is amended, the sections, as amended, must be set out in full; nothing more is required. In the present case the section as amended is set out in full in strict compliance with the Constitution, and so we have before held." [State v. Chambers, 70 Mo. 625; State ex rel. Walker v. Hurlstone, 92 Mo. 327; State ex rel. Atty.-Gen. v. Miller, 100 Mo. 439.]

In the case last cited in discussing the same subject it was said: "The object of this section is sufficiently stated in Morrison v. Railroad, 96 Mo. 602. It is there shown that when an act undertakes to amend a former statute it is not sufficient to say certain words are stricken out, or certain words inserted, but that the section as amended must be set out in full, and this is all that is required."

These decisions were all concurred in by a full bench and should now be regarded as the settled law

of this State.    [See also Scott v. Railroad, 38 Mo. App. 523.]

The section as amended is set out in full, and is substantially as set forth in the prefatory clause, the only difference being that in that clause the words, "so to clear up and burn such undergrowth as required by," were omitted in the section as amended, and in place of them was substituted the words, "to comply with the provisions of;" thus making it read, "any corporation, company or person failing to comply with the provisions of this section, shall incur a penalty of not to exceed five hundred dollars and be liable for all damage done by said neglect of duty," instead of reading, "any such corporation, company or person failing to clear up and burn such undergrowth and vegetation, as required by this section, shall incur a penalty not to exceed five hundred dollars, and be liable for all damages done by said neglect of duty," as provided in the prefatory clause.

It is also contended that the amendatory Act of 1883, was passed in violation of section 28 of article 4 of the Constitution, which provides that no bill "shall contain more than one subject," and that this bill contains two distinct subjects: first, it made it the duty of the railway companies of the State to remove or destroy all dead or dry vegetation and undergrowth upon the right of way, and enforced this duty by an appropriate penalty; second, it subjected any railroad company that failed to construct ditches and drains to carry off the surface water obstructed by its roadbed, to a penalty of $500, and gave to the landowner a right of action against the company for all damages caused by such failure.

The question thus presented for our consideration is, are these provisions germane to the subject treated of in the title to the act?    It is as follows: "An act to amend section 810, chapter 21, article 2, of the Re-

vised Statutes of the State of Missouri, relating to private corporations, railroad companies.''

In State ex rel. v. Mead, 71 Mo. 266, SHERWOOD, C. J., in passing upon a similar question to the one now under consideration, after citing State ex rel. v. Lafayette Co. Ct., 41 Mo. 39; City of St. Louis v. Tiefel, 42 Mo. 578, and City of Hannibal v. County of Marion, 69 Mo. 571, said: ''The principle to be readily deduced from these cases and the authorities cited, is, that if any matter contained in a statute be objected to, as not referred to in the title, or that the bill contains more than one subject, the objection urged will not be held well taken, if the clause or section to which objection is raised be germane to the subject treated of in the title.'' The title of the act passed upon in that case was ''concerning popular elections,'' and the act provided for the filling of vacancies by appointment by the Governor, and it was said, ''there is an obvious connection and congruity between the idea expressed in the title and that of providing for filling, by gubernatorial appointment, vacancies temporarily occurring in offices.''

The statute in question was intended for the protection of lands and crops in proximity to railroads, from injury or destruction by two destructive agencies, fire and water, and in order to prevent injury by fire it makes it the duty of persons or corporations owning or operating any railroad to clear off and burn up or remove all dead or dry vegetation and undergrowth upon the right of way occupied by any railroad, for the purpose of preventing the spreading of fire, and the destruction of property. And, in order to prevent injury to such property by water, they are required to construct and maintain suitable ditches and drains along each side of such roadbed, to connect with ditches, drains or watercourses so as to afford sufficient outlet to drain and carry off the water along such railroad whenever the draining of such water has been ob-

structed or rendered necessary by the construction of such railroad. The real purpose was the same, and the same penalty or liability imposed for damages for failure or neglect in the one instance as in the other. It thus seems clear that the provisions of the statute are not incongruous but are germane to its title, and fairly relate to the same subject, have a natural connection with it, and afford the means of accomplishing it, and is therefore not obnoxious to the Constitution. It follows that no error was committed in overruling defendant's objection to the admission of evidence under the petition.

But in any event, as this is an action under the provisions of the Act of 1874, section 2614, Revised Statutes 1889, for damages to growing crops occasioned by the alleged negligence of defendant company in failing to cause to be constructed and maintained suitable ditches and drains along each side of its roadbed, in consequence of which plaintiff's crops were destroyed, and not for the penalty imposed by that section, the action is in no way affected by the Act of 1883, and it is therefore immaterial whether that act be held to be constitutional or not.

This being the case, will an action lie in favor of plaintiff for damages sustained by him by reason of the alleged neglect of defendant to perform a duty imposed by that act, or section? Defendant claims that it will not, and that no right of action is conferred upon plaintiff by the act, and, as it provides that if "such corporation, company or person shall fail or neglect to construct and maintain such ditches or drains within the time limited in this article, the county courts of the counties through which such railroad has been or may be located are hereby authorized, and required, upon the petition of twenty landowners of such county along the line and contiguous to such railroad, to cause such ditches or drains to be constructed and maintained, and such court may maintain an action against

such corporation, company or person so failing to construct and maintain such ditches or drains in any court of competent jurisdiction, in the name of such county, and shall be entitled to recover all costs, expenses and damages incurred and accruing in the construction and maintenance of such ditches or drains,'' the course pointed out by the act to be pursued is exclusive, and plaintiff is without remedy.   Many actions have been prosecuted by persons against railroad companies for damages sustained for the violation of this act or section, and passed upon by the Courts of Appeals, and in no one of them has the right to do so ever been denied.   [Graves v. Railroad, 69 Mo. App. 574; Field v. Railroad, 21 Mo. App. 600; Scott v. Railroad, 38 Mo. App. 523; Byrne v. Railroad, 47 Mo. App. 383.]

So with regard to similar questions, for instance, the failure to perform a duty imposed by statute or city ordinances upon railroad companies, for which a recovery may be had by any person injured by reason thereof.   [Jackson v. Railroad, 157 Mo. 621; Gebhardt v. Railroad, 71 S. W. 448.]

Defendant contends that the demurrer to the evidence should have been sustained because it was not shown that damage was done to similar crops before 1896, or that the water falling upon the land in question was not sufficient of itself to drown out plaintiff's crop.   But the evidence showed clearly that but for the construction of the railroad the water would have all drained off eastward from the land and therefore would not have stood upon the land as it did, and further, that if there had been a suitable ditch along the west side of the roadbed the water would not have been confined upon the land until absorbed by the earth or evaporated.   It is true that storms caused Little Shoal creek to overflow quite frequently in 1896 and in 1897, and that it "used to overflow nearly every rain," but before the railroad was constructed it did not stand upon the land, but after that time it held the

water on plaintiff's land after it got out of the creek. But where it came from is immaterial, for whether overflow or surface water, it was defendant's duty to have provided a ditch along the side of its track so that it could have passed out. The common-law rule as to surface water prevails in this State; that is, owners of lands may improve them by obstructing or diverting it, provided it be not done in a reckless manner resulting in injury to some other person. The same rule applies to railroads in the construction of their roadbeds in the absence of statutory enactment as in this State, requiring them "within three months after the completion of the same through any county in this State, to cause to be constructed and maintained suitable ditches and drains along each side of the roadbed of such railroad to connect with ditches, drains or watercourses, so as to afford sufficient outlet to drain and carry off the water along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad." The statute is an innovation upon the common law, as it clearly has reference to overflow water, which is surface water, as well as water from rainfalls and melting snow; otherwise it is meaningless.

The instructions are in accordance with the views which we have expressed, and presented the case very fairly to the jury.

The judgment is for the right party and should be affirmed. It is so ordered. All of this Division concur.