No. 83-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

FORMICOVE, INC.,

        Plaintiff and Appellant,

  -vs-

BURLINGTON NORTHERN, INC.,

        Defendant and Respondent.

APPEAL FROM: District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dzivi, Conklin & Nybo; Susan J. Rebeck, Great Falls,
        Montana

    For Respondent:

        Charles C. Dearden, Billings, Montana

                          Submitted: September 21, 1983
                             Decided: December 20, 1983

Filed:

*Ethel M. Harrison*

—————————————————————
                      Clerk

Honorable Gordon R. Bennett, District Judge, delivered the Opinion of the Court.

Plaintiff, Formicove, Inc., appeals from a summary judgment granted Burlington Northern, Inc. (BN), by the District Court of the Eighth Judicial District, Cascade County.

BN has a railroad enbankment situated between Formicove's property and the Missouri River. Two culverts run under the embankment. In May of 1980 and June of 1982 Formicove's basement was flooded by surface waters. Formicove claims BN's failure to maintain its culverts caused the surface waters to flood Formicove's basement. Relying upon LeMunyon v. Gallatin Valley Ry. Co. (1921), 60 Mont. 517, 199 P. 915, the District Court held that section 69-14-240, MCA, does not impose a statutory duty on BN with regard to obstruction of surface waters and granted BN summary judgment.

The dispositive issue here is whether the LeMunyon case correctly held that section 69-14-240, MCA, imposes no statutory duty on a railroad with regard to obstruction of surface waters. We believe the LeMunyon holding is manifestly incorrect and must therefore be overruled.

Relying on definitions of surface waters and watercourses laid down in Fordham v. Northern Pacific Ry. Co. (1904), 30 Mont. 421, 76 P. 1040 (set forth below) and the facts presented, the Court found that the water in question was surface water as opposed to water running in a watercourse. Reciting the common law rule to the effect that surface water is "the enemy of all mankind," against which each owner is legally entitled to protect his land, the Court concluded the rule was not altered by what was then section

2

4362, Revised Codes, a codification of a 1903 Act, now section 69-14-240(1), MCA. That section then provided:

> "It shall be the duty of every corporation, company, or person owning or operating any railroad, or branch thereof, in this state, and of any corporation, company, or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable ditches and drains along each side of the roadbed of such road or to construct culverts or openings through such roadbed to connect with ditches or drains, or watercourses, so as to afford sufficient outlet to drain and carry off the water along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; provided that none of the drains or ditches herein referred to shall be required to be constructed by any of the persons or corporations herein named or described, except when required to remove and drain off water accumulated upon property adjacent to or upon the right of way whose natural channel or outlet has been destroyed or impaired by the embankment of such railway so constructed as aforesaid. . . ." (Emphasis added.)

The Court held:

> ". . . That portion of section 4362, supra, included within the exception or proviso, which mentions 'natural channel' or 'outlet' refers back to the first or main body of the section, fixing the requirements of railroad corporations as to ditches, drains, and watercourses, and means 'ditches,' 'drains,' or 'watercourses' as therein expressed, and hence the provisions of this section likewise afford no relief to the respondent." 60 Mont. at 525, 199 P. at 917.

This view has been followed for more than sixty-two years.

Where the intention of the legislature can be determined from the plain meaning of words used in a statute, courts may not go further and apply any other means of interpretation. Tongue River Elec. Coop. v. Mont. Power Co. (Mont. 1981), 636 P.2d 862, 38 St.Rep. 2032.

3

In construing a statute, our duty is simply to ascertain and declare what is in terms or in substance contained therein. We may not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA.

The statutory language before the proviso required construction and maintenance of ditches and drains to connect with "ditches or drains or watercourses" to carry off water impounded by a railroad embankment. The proviso was a limitation on the general rule: Drains and ditches will be required only to drain off accumulated water whose "natural channel or outlet" has been destroyed or impaired by the embankment. The LeMunyon opinion equated the words "natural channel or outlet" in the proviso to the words "ditches or drains or watercourses" in the principal clause and apparently concluded from this that the word "watercourses" was intended to be included in the proviso and that therefore the statute did not contemplate surface water, only watercourses.

This severely limiting construction overlooks the obvious principal purpose of the statute, which was to change the common law rule as it applied to railroads. The statute speaks not only of "watercourses," but "ditches," "drains," "culverts," "openings," and "outlets" to drain and carry off water ". . . whenever the draining of such water has been obstructed" and removing and draining off water accumulated upon nonrailroad property. Clearly the statute was intended to deal with impounded water of any kind, without regard to the nice distinction made between surface water and a watercourse in Fordham, 30 Mont. at 431, 76 P. at 1043:

> ". . . If the flood water becomes severed
> from the main current, or leaves the same
> never to return, and spreads out over the
> lower ground, it becomes surface water.
> But if it forms a continuous body with

the water flowing in the ordinary chan-
nel, or if it departs from such channel
presently to return, it is to be regarded
as still a part of the stream. . . ."

While it might be said, as the commissioner did, that
the proviso words "natural channel or outlet" refer to the
principal clause, it is not possible to comprehend from his
opinion how he equated those words to the words "ditches,
drains or watercourses" in the principal clause. The context
is not even the same. The latter words are used to describe
the places to which the vagrant water is to be returned. The
former words are used to describe the places from which the
vagrant water came as a result of the embankment. There is
no rule of statutory construction that would approve of this
contextual flip-flop.

Even if by this literary legerdemain one reads the
words "ditches or drains or watercourses" into the proviso to
substitute for the words "natural channel or outlet" set
forth therein by the legislature, the limitation imposed by
the LeMunyon court decision could not be sustained. To do so
we would be required to give meaning to the word "watercours-
es" and to ignore the words ditches and drains. In constru-
ing a statute we are required to consider it as a whole and,
if possible, give meaning to every word contained therein.
Section 1-2-101, MCA; State ex rel. Cashmore v. Anderson
(1972), 160 Mont. 175, 500 P.2d 921. In doing so here, we
would have to recognize that ditches and drains carry surface
waters as well as water in watercourses as defined in
Fordham, supra. Thus, even if the tortured construction
rendered in LeMunyon is accepted, it would not support the
conclusion that the proviso limited application of the stat-
ute to watercourses.

5

We must assume that the legislature does not perform idle acts. Section 1-3-223, MCA. An interpretation that gives effect is always preferred to one that makes a statute void or treats a statute as mere surplusage. American Linen Supply v. Dept. of Revenue (Mont. 1980), 617 P.2d 131, 37 St.Rep. 1707. The LeMunyon construction reduced the statute to mere surplusage, making it nothing more than a codification of the common enemy rule.

Viewing the statute as written, rather than as artificially reconstructed, we reach the unavoidable conclusion that the legislature intended to change the existing law and set aside the common enemy rule as applied to railroad embankments in favor of the adopted maxim, "[o]ne must so use his own rights as not to infringe upon the rights of another." Section 1-3-205, MCA. Our conclusion is reinforced by interpretations of a comparable Missouri statute by that state's courts (Cox v. Hannibal & St. J. R. Co. (1903), 174 Mo. 588, 74 S.W. 854, and Murphy v. St. Louis-San Francisco R. Co. (1920), 205 Mo.App. 682, 226 S.W. 637) and confirmed by the United States Supreme Court (Chicago & Alton R. Co. v. Tranbarger (1915), 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 1204).

Section 69-14-240(1), MCA, is the same as section 4362 Revised Codes, the statute construed by the LeMunyon court, except for the conversion of the proviso clause into a separate sentence during codification.

It is apparent then that section 69-14-240, MCA, was misconstrued in LeMunyon.

BN nevertheless contends that under the doctrine of stare decisis we must follow this prior contrary holding. While stare decisis is a fundamental doctrine which reflects our concerns for stability, predictability and equal

6

treatment, _stare_ _decisis_ does not require that we follow a manifestly wrong decision. State v. Fischl (1933), 94 Mont. 92, 20 P.2d 1057; State v. District Court of Fourth Judicial Dist. (1965), 145 Mont. 287, 400 P.2d 648. See also, Jepson v. Department of Labor & Industries (1977), 89 Wash.2d 394, 573 P.2d 10. _LeMunyon_ is therefore overruled insofar as it held that section 69-14-240, MCA, imposes no duty on a railroad for obstruction of surface waters.

Reversed and remanded.

Honorable Gordon R. Bennett, District Judge, sitting in place of Mr. Chief Justice Frank I. Haswell

We concur:

Justices

Honorable Peter L. Rapkoch, District Judge, sitting in place of Mr. Justice Frank B. Morrison, Jr.

Mr. Justice Fred J. Weber respectfully dissents as follows:

I dissent from the majority holding that Le Munyon and case law consistent with that 1921 opinion misconstrue section 69-14-240, MCA. Nothing in the statutory language nor the legislative history indicates that the Montana legislature intended to hold railroads to a higher duty of care in managing surface water than the duty imposed on other property owners.

> "An uphill property owner owes no duty to his downhill neighbor to prevent the encroachment of such vagrant or surface waters from his property onto his neighbor's. Le Munyon v. Gallatin Valley Ry. Co., 60 Mont. 517, 199 P. 915. This Le Munyon rule has been reviewed and affirmed from time to time in the following Montana cases: Sylvester v. Anaconda Min. Co., 73 Mont. 465, 236 P. 1067; O'Hare v. Johnson, 116 Mont. 410, 153 P.2d 888; State Highway Comm'n v. Biastoch Meats, Inc., 145 Mont. 261, 400 P.2d 274. Accordingly, defendant is entitled to judgment as a matter of law." Roope v. The Anaconda Company (1972), 159 Mont. 28, 33, 494 P.2d 922, 924.

In reaching the "unavoidable conclusion that the legislature intended to change the existing law and set aside the common enemy rule as applied to railroad embankments," the majority overrules Le Munyon and 62 years of precedent, which consistently found to the contrary. The predecessor to section 69-14-240, MCA was enacted in 1903. At no time in the intervening 80 years has our legislature amended the statute to include surface waters.

The majority cites Missouri case law to bolster its discovery of legislative intent regarding surface water. The 1879 version of Missouri's statute is identical to the challenged language in the first part of section 69-14-240, MCA. See Rev.St.Mo. § 810 (1879). However, in 1907 the Missouri legislature added the critical element underscored below:

> "It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state, and of any corporation, company or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or water courses, so as to afford sufficient outlet to drain off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; . . .." Rev.St.Mo. § 3150 (1909). See Rev.St.Mo. § 389.660 (1978).

This amendment nullifies the precedential value of the 1915 and 1920 cases cited as authority in the majority opinion.

Cox v. Hannibal and St. Joseph R. Co. (1903), 174 Mo. 588, 74 S.W. 854 is limited authority for the majority position. In Missouri, Cox was approved by the 1907 legislative addition of "surface water" to its statute. Montana had the same legislative opportunity as Missouri, but chose not to exercise it. That is a portion of our history which was not considered by the majority.

The majority's statutory reinterpretation imposes a new duty upon the railroad without defining that duty. Plaintiff here characterized the offending water as surface water and rain water. The majority opinion apparently imposes a duty upon Burlington Northern to accept adjoining property owners' surface water. It does not specify how the railroad is to manage these waters once they are diverted from adjoining lands into the railroad's ditches and culverts. The Supreme Court of Missouri has held that:

> "'The law places upon a railroad no duty (and grants a railroad no permission) to enter upon any servient land to construct or to enlarge any existing ditch, drain or watercourse to increase its water carrying capacity,' Smithpeter v. Wabash R. Co., supra, and a railroad may not make an opening in its roadbed and discharge accumulated surface water on an adjacent proprietor, when no

9

> ditch, drain or watercourse exists to carry it away
> without incurring liability for such action."
> Temple v. Atchison, Topeka & Santa Fe Railway Co.
> (1967), 417 S.W.2d 97, 100.

A new duty to drain off or remove accumulated surface waters from adjoining property has been created here. I believe the judiciary, like the legislature, has an obligation to define the limits of any duty it imposes upon individual or corporate citizens.

Last, I am troubled by ex post facto application of the majority's holding. The District Court's summary judgment in favor of the defendant was a correct ruling based on the law at that time. To reverse that judgment, the majority has overruled long-standing precedent. The cause is remanded for a determination of liability for failure to perform a duty. According to rulings of this Court in effect at the time of the flooding, that duty did not exist. In remanding the cause to be tried under new law, the majority not only imposes a new duty upon the defendant, but instructs the District Court to apply 1983 law to 1980 facts.

> "The construction given to a statute, although
> erroneous, before its reversal or modification,
> becomes a part of it as much as though written into
> it; and the change made in construction will affect
> only contracts made thereafter." Montana Horse
> Products Co. v. Great Northern Ry. Co. (1932), 91
> Mont. 194, 216, 7 P.2d 919, 927.

The issue of liability for flooding that occurred prior to this Court's reconstruction of the statute and reversal of Le Munyon should not be affected by today's ruling.

I would affirm the District Court and leave the changing of the statute to the legislature.

Justice

I join in the foregoing dissent.

Justice

10