MR. JUSTICE WEBER
dissenting.
I dissent from the majority holding that LeMunyon and case law consistent with that 1921 opinion misconstrue Section 69-4-240, MCA. Nothing in the statutory language nor the legislative history indicates that the Montana legislature intended to hold railroads to a higher duty of care in managing surface water than the duty imposed on other property owners.
“An uphill property owner owes no duty to his downhill neighbor to prevent the encroachment of such vagrant or surface waters from his property onto his neighbor’s. LeMunyon v. Gallatin Valley Ry . Co., 60 Mont. 517, 199 P. 915. This LeMunyon rule has been reviewed and affirmed from time to time in the following Montana cases: Sylvester v. Anaconda Min. Co., 73 Mont. 465, 236 P. 1067; O’Hare v. Johnson, 116 Mont.410, 153 P.2d 888; State Highway Comm’n v. Biastoch Meats, Inc., 145 Mont. 261, 400 P.2d 274. Accordingly, defendant is entitled to judgment as a matter of law.” Roope v. The Anaconda Company (1972), 159 Mont. 28, 33, 494 P.2d 922, 924.
In reaching the “unavoidable conclusion that the legislature intended to change the existing law and set aside the common enemy rule as applied to railroad embankments,” the majority overrules LeMunyon and 62 years of prece *196 dent, which consistently found to the contrary. The predecessor to Section 69-14-240, MCA was enacted in 1903. At no time in the intervening 80 years has our legislature amended the statute to include surface waters.
The majority cites Missouri case law to bolster its discovery of legislative intent regarding surface water. The 1879 version of Missouri’s statute is identical to the challenged language in the first part of Section 69-14-240, MCA. See Rev.St.Mo. § 810 (1879) the Missouri legislature added the critical element scored below:
“It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state, and of any corporation, company or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable openings across and through the right of way and roadbed of such railroad, and suitable ditches and drains along each side of the roadbed of such railroad, to connect with ditches, drains or water courses, so as to afford sufficient outlet to drain off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; . . .” Rev.St.Mo. § 3150 (1909). See Rev.St.Mo. § 389.660 (1978).
This amendment nullifies the precedential value of the 1915 and 1920 cases cited as authority in the majority opinion.
Cox v. Hannibal and St. Joseph R. Co. (1903), 174 Mo. 588, 74 S.W. 854 is limited authority for the majority position. In Missouri, Cox was approved by the 1907 legislative addition of “surface water” to its statute. Montana had the same legislative opportunity as Missouri, but chose not to exercise it. That is a portion of our history which was not considered by the majority.
The majority’s statutory reinterpretation imposes a new duty upon railroad without defining that duty. Plaintiff here characterized the offending water as surface water and *197 rain water. The majority opinion apparently imposes a duty upon Burlington Northern to accept adjoining property owners’ surface water. It does not specify how the railroad is to manage these waters once they are diverted from adjoining lands into the railroad’s ditches and culverts. The Supreme Court of Missouri has held that:
“ ‘The law places upon a railroad no duty (and grants a railroad no permission) to enter upon any servient land to construct or to enlarge any existing ditch, drain or watercourse to increase its water carrying capacity,’ Smithpeter v. Wabash R. Co., supra, and a railroad may not make an opening in its roadbed and discharge accumulated surface water on an adjacent proprietor, when no ditch, drain or watercourse exists to carry it away without incurring liability for such action.” Temple v. Atchison, Topeka & Santa Fe Railway Co. (1967), 417 S.W.2d 97, 100.
A new duty to drain off or remove accumulated surface waters from adjoining property has been created here. I believe the judiciary, like the legislature, has an obligation to define the limits of any duty it imposes upon individual or corporate citizens.
Last, I am troubled by ex post facto application of the majority’s holding. The District Court’s summary judgment in favor of the defendant was a correct ruling based on the law at that time. To reverse that judgment, the majority has overruled long-standing precedent. The cause is remanded for a determination of liability for failure to perform a duty. According to rulings of this Court in effect at the time of the flooding, that duty did not exist. In remanding the cause to be tried under new law, the majority not only imposes a new duty upon the defendant, but instructs the District Court to apply 1983 law to 1980 facts.
“The construction given to a statute, although erroneous, before its reversal or modification, becomes a part of it as much as though written into it; and the change made in construction will affect only contracts made thereafter.” Montana Horse Products Co. v. Great Northern Ry. Co. *198 (1932), 97 Mont. 194, 216, 7 P.2d 919, 927.
The issue of liability for flooding that occurred prior to this Court’s reconstruction of the statute and reversal of LeMunyon should not be affected by today’s ruling.
I would affirm the District Court and leave the changing of the statute to the legislature.
MR. JUSTICE GULBRANDSON joins in the foregoing dissent.